(33 Misc. Rep. 668.)

### DICKINSON v. COLONIAL TRUST CO.

(Supreme Court, Special Term. New York County. January, 1901.)

1. ADMINISTRATOR—HEIR—GIFTS.

An administrator, who is also sole heir, cannot make a gift of the fund of which he is administrator, before final decree, which will entitle the donee to possession, since as administrator a gift is in violation of his trust, and as heir he is not then entitled to possession of the fund.

2. SAME—FUNDS—DEPOSITARY—SURETY.

Where an administrator, who is also sole heir, has agreed with the surety on his bond to deposit the funds of the estate in a certain manner, and not withdraw them except with the surety's consent, the adminis-trator's donee cannot withdraw the funds without consent of the surety.

Action by Jennie A. Dickinson against the Colonial Trust Com-pany. Judgment for defendant.

George F. Langbein, for plaintiff.

Sheehan & Collin, for defendant.

RUSSELL, J. In the conclusion formed by this court as to the right to recover in the present action against the defendant the sum of $1,973.73 and interest, I have deemed it unwise to state my opinion as to the validity of the gift, in view of death, by John Kealey to the plaintiff, as it is unnecessary to do so, and might embarrass one of the parties in any future litigation proceeding in another forum. The original owner of the fund in controversy was Rose Kealey, deceased, the mother of the alleged donor, John Kealey, now deceased. Rose Kealey died May 1, 1899, in the city of New York, leaving, so far as the evidence discloses, John Kealey as her sole next of kin. He was apppointed administrator, it having been discovered that the sum of $2,519.43 belonging to the deceased, Rose Kealey, remained unexpended by her. To obtain the proper surety on the administrator's bond, so that he might receive letters of administration, John Kealey executed to the United States Guaranty Company an agreement by which he was to deposit the funds in the Colonial Trust Company, and not to draw them out except on checks countersigned by the guaranty company, thus insuring the surety, which became responsible that he should properly account and disburse, according to the order of the surrogate's court, the fund of which he was administrator. John Kealey died April 9, 1900, and it is claimed that in his dying hours, in view of death, he gave, by symbolical delivery of the guaranty bond and other papers with expressions of intent, the amount remaining unexpended of the estate then on deposit with this defendant under the agreement with the guaranty company. The plaintiff, as such donee, brings this action against the defendant to recover the amount, no successor having been appointed to John Kealey as administrator of Rose Kealey, and no administration being had upon his estate. It is very true, as claimed by plaintiff's counsel, that an executor or administrator has power to dispose of the personal property, but only for the purposes of his trust. To protect those dealing with him, he may draw checks upon money balances, and may sell articles of personalty so as to give a good title to the purchaser. He is the sole representative of the title once held by the deceased, but a gift is a violation of his trust, and conveys no title to the donee; nor does the fact that he is the sole next of kin increase his power, except as it conveys the equitable right which he would have had whether administrator or not. As next of kin, he could not give away property as against his right to demand it as administrator for the purpose of his trust, nor was his voluntary assumption of the obligation to carry out and perform his duty as administrator in surrogate's court a mere matter of form. The law protects, until final decree, all who may have interest in the estate of a deceased person. The personalty is to be used to pay the expenses of administration and creditors, and then to distribute to the next of kin. An administration once begun must be continued to the end before a perfect distribution can be made. Until the proper notice to creditors has been given, and the proper time elapsed, no one has a right to withdraw the funds of the estate from the grasp of the surrogate's court. It acts partly in rem and partly in personam. Its final decree protects if all the

legal observances have been complied with; but no court of equity can intervene, in a proceeding which has only as parties the claimant and the depositary of funds, to deprive the surrogate's court of its power to effectually deal with the estate. The jurisdiction of the surrogate does not cease with the death of the administrator. In the eye of the law the right and power of the successor in administration continues the title in the administrator from the instant of death, and the successor can only terminate the liability originated by the bond given by the administrator and obtain a final decree, which shall justify action by the depositary against the world. Therefore the bond of any surety for the administration could not finally be discharged until the completion of the procedure in surrogate's court. There is an added reason in the present case for protection to the depositary because of the agreement by which the depositary received the fund from the surety, in which agreement the deceased administrator distinctly agreed not to do the very thing which the alleged donee is now seeking to do. He consented not to withdraw the fund except with the consent of the guaranty company. That covenant is very essential to the protection of the surety as well as the defendant. If the judgment of this court should compel the defendant to pay, and hereafter, within the legal limit of time, claimants should appear, either as creditors or next of kin of the deceased, Rose Kealey, and obtain a continuance of the administration and an award by the surrogate, what protection would the guaranty company have against a demand for payment of the funds of the estate? Or what plea could be made on behalf of the defendant to a request by the guaranty company to surrender the funds in obedience to the order of the court? Surely a mere donee can have no better title or right to the fund in controversy than the deceased donor himself had. Could he, in violation of his agreement, have maintained the action as against this defendant? Let judgment go in favor of defendant dismissing the complaint, with costs.